

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

JUN 2 2 2009

J.T. NOBLIN, CLERK
BY_____DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**HAROLD YORK and**
**CAROL YORK**                                                    **PLAINTIFFS**

**VS.**                                    Civil Action No.    1:09CV378LG-RHW

**USAA CASUALTY INSURANCE COMPANY;**
**and JOHN DOES 1-10,**                                          **DEFENDANTS**

### COMPLAINT
#### JURY TRIAL REQUESTED

COME NOW, Harold York and Carol York ("Plaintiffs"), by and through counsel, and

files their Complaint against Defendants USAA Casualty Insurance Company ("USAA CIC")

and John Does 1-10 ("John Does"), and allege as follows:

### I. PARTIES

1.      At all relevant times herein, Plaintiffs Harold York and Carol York were adult

resident citizens of 578 Sandy Hook Drive, Pass Christian of Harrison County, Mississippi.

2.      Defendant USAA CIC is a stock company wholly owned by United Services

Automobile Association that is a Delaware corporation domiciled in the State of Texas, with its

principal office and place of business located at 9800 Fredericksburg Road, San Antonio, Texas

78288, and which may be served with process by service on its agent for service of process

Robert S. Addison, 4400 Old Canton Road, Suite 400, Jackson, Mississippi 39211, or on the

Mississippi Insurance Commissioner, P.O. Box 79, Jackson, Mississippi, 39205-0079, pursuant

to Mississippi Code Annotated §83-21-1.

3.     Defendants John Does 1-10 are entities affiliated with Defendants and/or have acted in concert with Defendants and whose identities are currently unknown.  All allegations and claims asserted herein against Defendants are incorporated herein by reference against John Does 1-10.  Said John Does, when their identities are known, will be identified by name and joined in this action, if necessary, pursuant to the Mississippi Rules of Civil Procedure.

## II.
## SUBJECT MATTER AND PERSONAL JURISDICTION

4.     This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00.

## III.
## VENUE

5.     Venue in this cause is proper in this Court pursuant to 28 U.S.C. §1391, because this suit respects real and personal property which is completely within the district of the United States District Court for Southern District of Mississippi. This suit also respects conduct, acts and/or omissions of the Defendants which occurred completely within the United States District Court for the Southern District of Mississippi, Southern Division.

## IV
## FACTS

6.     Plaintiffs purchased from Defendants standard Homeowner's Policies.  A copy of the subject policy is attached as Exhibit "A" to this Complaint.

7.     The subject policy provides "all risk" coverage for all "direct physical loss" to Plaintiffs' "Dwelling" and "Other Structures" unless the proximate and efficient cause of the loss is one that is expressly excluded by the policy, stating as follows:

COVERAGE A  -  DWELLING and

2

COVERAGE B - OTHER STRUCTURES

We insure against risks of *direct, physical loss*
to property described in Coverages A and B;

. . .

8.    This broad "all risk" coverage includes coverage for loss proximately and efficiently caused by hurricane wind as well as for *objects* driven by the hurricane wind and/or hurricane storm surge.

9.    The subject policy also provides coverage for "direct physical loss" to Plaintiffs' "Personal Property" proximately and efficiently caused by a Hurricane, which is considered a "windstorm," stating as follows:

COVERAGE C - PERSONAL PROPERTY

We insure for *direct physical loss* to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS.

. . .

2. Windstorm or hail.

10.    The subject policy further provides coverage for a "Collapse" of the Plaintiffs' Dwelling, Other Structures and/or Personal Property proximately and efficiently caused by hurricane wind and/or water borne debris impacting the Plaintiffs' properties.

11.    In the late 1990's, DEFENDANTS effected a mandatory modification of the policy raising the deductible for hurricane-caused losses. DEFENDANTS subjected Plaintiffs and other policyholders to more risk of loss from hurricanes through the "Wind and Hail" Deductible ("Hurricane Deductible") of 1% or more of the subject policy, to ensure coverage for any and all damage to Plaintiffs' insured property proximately caused by a hurricane, above the deductible limit.

12.     During the time Plaintiffs' policy was in effect, DEFENDANTS requested and received premium rate increases and/or retained risk (deductible) increases for Plaintiffs' policies from the Mississippi Department of Insurance.  Said increases were justified by DEFENDANTS by the hurricane risks associated with Coastal properties.  Defendant utilized hurricane-specific experience ratings and computer model projections of hurricane losses to corroborate its demands for such rate increases.  DEFENDANTS did not distinguish or differentiate between hurricane wind and water perils in requesting and setting these rate increases.

13.     For such coverage, Plaintiffs agreed and paid DEFENDANTS annual premiums. Plaintiffs also agreed to pay the Hurricane Deductible to ensure insurance coverage for any and all accidental direct physical loss caused by a hurricane above the deductible limit, including all damage proximately and efficiently caused by hurricane wind.

14.     Plaintiffs purchased their policies from DEFENDANTS for, *inter alia,* the express and primary purpose of insuring against any accidental direct physical loss that could proximately and efficiently result from hurricanes impacting the Mississippi Gulf Coast.

15.     On August 29, 2005, within the periods of coverage of the subject policies, the insured "Dwellings"; "Other Structures"; and the "Personal Property" of Plaintiffs were significantly damaged and destroyed by Hurricane Katrina.  These were "direct physical losses" covered under the subject policies.

16.     The "direct physical losses" sustained by Plaintiffs to the insured properties were proximately and efficiently caused by covered events that occurred in the absence of water, thereby triggering full coverage for all Plaintiffs' hurricane losses.

17.     Hurricane Katrina's devastating and catastrophic wind activity occurred 4-6 hours before the peak hurricane storm surge, and completely destroyed Plaintiffs' properties prior to the arrival of any storm surge.

18.     The meteorological and physical evidence at the sites of the insured properties and the accounts of eyewitnesses also establish that the insured properties were completely destroyed by wind activity prior to any storm surge.

19.     In accordance with policy provisions, Plaintiffs notified DEFENDANTS of their "direct physical losses."

20.     However, DEFENDANTS failed to fairly, adequately, and sufficiently investigate or adjust Plaintiffs' losses.

21.     Based on its inadequate claims investigation and adjustment and, in certain instances, engineering reports that were speculative, inadequate, and inconclusive concerning the extent to which Plaintiffs' losses were caused by water or water-borne debris, if any, and how much of the losses was caused by hurricane wind, DEFENDANTS denied Plaintiffs' claims for hurricane damage and failed to pay Plaintiffs for the amount of their losses that it could not prove was caused by hurricane water.  In denying Plaintiffs' claims, DEFENDANTS cited their "water damage" exclusion and the "anti-concurrent cause clause," which state as follows:

> 1.     We do not insure for loss caused directly or indirectly by any of the following.  Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
>
> c.     **Water Damage**, meaning:
> (1)     flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind.

22.     DEFENDANTS denied Plaintiffs' insurance claims even though they failed as a matter of fact and Mississippi law to:  (1) sufficiently investigate the claims; (2) carry their

affirmative burden of establishing by a preponderance of the evidence at the time of the denial that Plaintiffs' losses were proximately and efficiently caused by "Water Damage" as defined in the exclusion; (3) carry their affirmative burden of establishing by a preponderance of the evidence at the time of the denial the amount of Plaintiffs' losses caused by "water", the amount caused by wind, and the amount caused by water-borne debris; or (4) pay Plaintiffs for the amount of their losses that DEFENDANTS could not prove by a preponderance of the evidence was caused by "water." As a result of DEFENDANTS' failures, Mississippi law precludes reliance on the anti-concurrent causation exclusion or the "water damage" exclusion and raises a duty to pay Plaintiffs for the full amount of their losses. DEFENDANTS' failure to pay Plaintiffs all insurance proceeds promptly upon completion of their alleged investigations is without legitimate or arguable reason in fact or law.

23.    DEFENDANTS' investigations, adjustments, and denials of Plaintiffs' claims were negligent, grossly negligent, and reckless. DEFENDANTS' denials of coverage for Plaintiffs' losses breached the subject contracts of insurance. Such conduct also constitutes bad faith and tortious breach of contract and breached the duty of good faith and fair dealing.

V

### COUNT ONE:
#### NEGLIGENCE/GROSS NEGLIGENCE/RECKLESS DISREGARD FOR RIGHTS OF PLAINTIFFS

24.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

25.    DEFENDANTS had a duty under Mississippi law fully, fairly, adequately and correctly to investigate and adjust Plaintiffs' claims for hurricane damage.

26.    DEFENDANTS breached this duty by failing to adequately investigate and adjust Plaintiffs' claims for hurricane damage.

27.    DEFENDANTS breached this duty by denying Plaintiffs' claims without meeting the affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiffs' losses were proximately and efficiently caused by "water damage," a peril excluded by the policy.

28.    DEFENDANTS breached this duty by denying Plaintiffs' claims without meeting the affirmative burden of establishing at the time of the denial by a preponderance of the evidence which amount of Plaintiffs' losses was caused by "water" or other excluded activity as defined in the subject insurance policies and which amount was caused by wind or other covered activity.

29.    Similarly, DEFENDANTS breached this duty by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

30.    DEFENDANTS breached this duty by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policy.

31.    DEFENDANTS breached this duty by dispatching adjusters to investigate, adjust, and deny Plaintiffs' losses who did not have the qualifications or training to determine the cause of Plaintiffs' losses.

32.    DEFENDANTS breached this duty by failing to properly train their adjusters on how to investigate and adjust Plaintiffs' losses.

33.    DEFENDANTS breached this duty by basing the denial of Plaintiffs' claims for hurricane damage on the investigation and adjustment of unqualified adjusters.

34.    DEFENDANTS breached this duty by failing to adequately inspect, investigate or adjust the insured properties prior to denying the claims.

35.    DEFENDANTS breached this duty by denying coverage for Plaintiffs' losses without conducting a complete, adequate, full, and fair investigation and adjustment of Plaintiffs' claims for damage under the subject policies.

36.    DEFENDANTS breached this duty by failing to credit any available statements from eyewitnesses in investigating and adjusting Plaintiffs' claims.

37.    DEFENDANTS breached this duty by failing to utilize objective meteorologists or structural engineers to determine the cause of Plaintiffs' losses prior to denying their claims.

38.    In claims where such engineering reports were utilized, DEFENDANTS breached this duty by denying Plaintiffs' claims on the basis of scientifically unreliable engineering reports.

39.    DEFENDANTS breached this duty by relying on unreliable meteorological data and mischaracterizing, perverting and ignoring valid meteorological data and eyewitness accounts in denying the claims.

40.    DEFENDANTS breached this duty by denying Plaintiffs' claims without knowing what caused the losses or undertaking any effort to ascertain what caused the losses.

41.    DEFENDANTS breached this duty by failing to pay Plaintiffs for their hurricane losses caused by hurricane wind, wind-driven debris, and water-borne debris.

42.    Such conduct as alleged above constitutes negligence, gross negligence, and/or reckless disregard for Plaintiffs' rights as DEFENDANTS' insureds.

43.    DEFENDANTS' negligent, grossly negligent, and/or reckless adjustment proximately caused Plaintiffs' economic and emotional damages.

## COUNT TWO:
### BREACH OF CONTRACT AGAINST DEFENDANTS

44.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

45.     Plaintiffs entered into insurance contracts with DEFENDANTS in which they contracted for, purchased, and were entitled to receive full insurance coverage for all "direct physical loss" or "collapse" to the insured Dwellings and Dwelling extensions, as well as loss of use. Plaintiffs similarly contracted for insurance coverage for all "accidental direct physical loss" to their personal contents proximately and efficiently caused by hurricane wind.

46.     Plaintiffs suffered a "direct physical loss."

47.     The overwhelming meteorological and physical evidence at the site of the insured properties, surrounding area, and eyewitnesses established that the insured properties were proximately and efficiently damaged by wind activity in the absence of and prior to the arrival and inundation of any storm surge.

48.     Plaintiffs satisfied their obligations by submitting claims showing that they sustained a "direct physical loss." However, DEFENDANTS breached the subject policies by unjustifiably denying insurance coverage for Plaintiffs' insured losses in the following ways:

49.     DEFENDANTS breached their contractual obligations by denying Plaintiffs' claims without meeting its affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiffs' direct losses were proximately and efficiently caused by "water damage," a peril excluded by the policy.

50.     DEFENDANTS breached their contractual obligations by denying Plaintiffs' claims without meeting its affirmative burden of establishing at the time of the denial by a

preponderance of the evidence which amount of Plaintiffs' losses was caused by "water" and which amount was caused by wind.

51.     Similarly, DEFENDANTS breached their contracts by failing to pay Plaintiffs for the damage it could not prove by a preponderance of the evidence was caused by "water."

52.     DEFENDANTS breached their insurance contracts by shifting to Plaintiffs the burden of proving that their losses were not excluded by the policy.

53.     DEFENDANTS breached their insurance contracts by denying Plaintiffs claims for hurricane damages without being able to meet their burden of proving by a preponderance of the evidence that Plaintiffs losses were not caused by covered wind activity.

54.     DEFENDANTS breached their insurance contracts by failing to conclusively and objectively determine the proximate and efficient cause of the losses prior to their denial of Plaintiffs' claims for hurricane damage.

55.     DEFENDANTS breached their insurance contracts by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the losses.

56.     DEFENDANTS breached their insurance contracts by basing the denial of Plaintiffs' claims on a nonobjective and scientifically unreliable engineering report.

57.     DEFENDANTS breached their insurance contracts by intentionally relying on unreliable meteorological data and mischaracterizing, perverting, and ignoring valid meteorological data and eyewitness accounts in denying the claims.

58.     DEFENDANTS breached their insurance contracts by basing the denial of Plaintiffs' claims on engineering reports that were speculative, inconsistent and inconclusive as to whether the damage to the insured properties was proximately and efficiently caused by wind.

59.    DEFENDANTS breached their insurance contracts by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured properties, surrounding area, and eyewitnesses that the losses were caused by wind activity.

60.    DEFENDANTS breached their insurance contracts by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that it did provide coverage for and pay according to the terms of the insurance contract.

61.    DEFENDANTS breached their insurance contracts by negligently, grossly negligently, and/or recklessly failing to conduct adequate, proper, honest, and good faith inspections, adjustments, and investigations of Plaintiffs' claims for hurricane damage prior to denying such claims.

62.    DEFENDANTS breached their insurance contracts by denying Plaintiffs' claims for hurricane damage without conducting adequate, proper, honest, and good faith adjustments, inspections, and investigations of Plaintiffs' claims for hurricane damage.

63.    DEFENDANTS breached their insurance contracts by basing the denial of Plaintiffs' claims for hurricane damage on inadequate investigations and inspections, and adjustments of Plaintiffs' losses.

64.    DEFENDANTS breached their insurance contracts by basing the denial of Plaintiffs' claims for hurricane damage on investigations, inspections and adjustments of adjusters who were unqualified to determine the proximate cause of the losses.

65.    DEFENDANTS breached their insurance contracts by failing to utilize objective meteorologists or engineers to determine the proximate cause of the losses prior to denying Plaintiffs' claims for hurricane damage.

66.     DEFENDANTS breached their insurance contracts by failing to construe the applicable insurance policies in favor of coverage for Plaintiffs' losses caused by hurricane wind, wind-driven debris, and water-borne debris.

67.     DEFENDANTS' breaches of contract have proximately caused Plaintiffs' economic and emotional damages.

### COUNT THREE:
#### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS

68.     Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

69.     DEFENDANTS breached the duty of good faith and fair dealing by unjustifiably denying the insurance coverage for Plaintiffs' insured losses in the following ways:

70.     DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims without meeting the affirmative burden of proving at the time of the denials by a preponderance of the evidence that Plaintiffs' direct physical losses were proximately and efficiently caused by "water damage," a peril excluded by the policy.

71.     DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims without meeting the affirmative burden of establishing at the time of the denials by a preponderance of the evidence which amount of Plaintiffs' losses was caused by "water" and which amount was caused by wind.

72.     Similarly, DEFENDANTS breached the duty of good faith and fair dealing by failing to pay Plaintiffs for the damage they could not prove by a preponderance of the evidence was caused by "water."

73.    DEFENDANTS breached the duty of good faith and fair dealing by shifting to Plaintiffs the burden of proving that their losses were not excluded by the policy.

74.    DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damages without being able to meet the burden of proving by a preponderance of the evidence that Plaintiffs' losses were not caused by covered wind activity.

75.    DEFENDANTS breached the duty of good faith and fair dealing by failing to conclusively and objectively determine the proximate and efficient cause of the losses prior to the denial of Plaintiffs' claims for hurricane damage.

76.    DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the losses.

77.    DEFENDANTS breached the duty of good faith and fair dealing by basing the denial of Plaintiffs' claims on nonobjective and scientifically unreliable engineering reports.

78.    DEFENDANTS breached the duty of good faith and fair dealing by intentionally relying on unreliable meteorological data and mischaracterizing, perverting and ignoring valid meteorological data and eyewitness accounts in denying the claims.

79.    DEFENDANTS breached the duty of good faith and fair dealing by basing denial of Plaintiffs' claim on engineering reports that were speculative, inconsistent and inconclusive as to whether the damage to the insured properties was proximately and efficiently caused by wind.

80.    DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured properties, surrounding area and eyewitnesses that the losses were caused by wind activity.

81.    DEFENDANTS breached the duty of good faith and fair dealing by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that they did provide coverage for and pay.

82.    DEFENDANTS breached the duty of good faith and fair dealing by negligently, gross negligently, and/or recklessly failing to conduct adequate, proper, honest, and good faith inspections, adjustments and investigations of Plaintiffs' claims for hurricane damage prior to denying such claims.

83.    DEFENDANTS breached the duty of good faith and fair dealing by denying Plaintiffs' claims for hurricane damage without conducting adequate, proper, honest, and good faith inspections, adjustments and investigations of Plaintiffs' claims for hurricane damage under the policy.

84.    DEFENDANTS breached the duty of good faith and fair dealing by basing its denials of Plaintiffs' claims for hurricane damage on inadequate investigations, inspections, and adjustments of Plaintiffs' losses.

85.    DEFENDANTS breached the duty of good faith and fair dealing by basing denials of Plaintiffs' claims for hurricane damage on the investigation, inspection and adjustment of adjusters who were unqualified to determine the proximate cause of the losses.

86.    DEFENDANTS breached the duty of good faith and fair dealing by failing to utilize objective meteorologists or engineers to determine the proximate cause of the losses prior to denying Plaintiffs' claims for hurricane damage.

87.    DEFENDANTS breached the duty of good faith and fair dealing by failing to construe its policy in favor of coverage for Plaintiffs' insured losses caused by hurricane wind, wind-driven debris, and water-borne debris.

14

88.    Such conduct by DEFENDANTS violates standards of decency, fairness, and reasonableness.

89.    DEFENDANTS' breaches of the duty of good faith and fair dealing in honoring its contract with the Plaintiffs has proximately caused economic and emotional damages that are compensable under Mississippi precedent.

## COUNT FOUR:
### BAD FAITH AND TORTIOUS BREACH OF CONTRACT

90.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

91.    DEFENDANTS tortiously, maliciously and in bad faith breached the subject policies by refusing to provide full insurance coverage under the subject policies for Plaintiffs' hurricane losses without a legitimate or arguable reason in fact or law.

92.    DEFENDANTS tortiously, maliciously and in bad faith breached the subject policies by denying Plaintiffs' claims without meeting the affirmative burden of proving at the time of the denial by a preponderance of the evidence that Plaintiffs' direct physical losses were proximately and efficiently caused by "water damage," a peril excluded by the policies.

93.    DEFENDANTS tortiously, maliciously and in bad faith breached the subject policies by denying Plaintiffs' claims without meeting the affirmative burden of establishing at the time of the denials by a preponderance of the evidence which amount of Plaintiffs' losses were caused by "water" and which amount was caused by wind.

94.    Similarly, DEFENDANTS tortiously, maliciously and in bad faith breached the subject policies by failing to pay Plaintiffs for the damage they could not prove by a preponderance of the evidence was caused by "water."

95.    DEFENDANTS tortiously, maliciously and in bad faith breached the subject policies by shifting to Plaintiffs the burden of proving that their loss was not excluded by the policies.

96.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by denying Plaintiffs' claims for hurricane damages without being able to meet its burden of proving by a preponderance of the evidence that Plaintiffs' losses were not caused by covered wind activity.

97.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by failing to conclusively and objectively determine the proximate and efficient cause of the losses prior to denial of Plaintiffs' claims for hurricane damage.

98.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by denying Plaintiffs' claims for hurricane damage without being able to conclusively and objectively determine the proximate and efficient cause of the losses.

99.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by basing denial of Plaintiffs' claims on nonobjective and scientifically unreliable engineering reports.

100.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by intentionally relying on unreliable meteorological data and mischaracterizing, perverting and ignoring valid meteorological data and eyewitness accounts in denying the claims.

101.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by basing denial of Plaintiffs' claims on engineering reports that were speculative, inconsistent and inconclusive as to whether the damage to the insured properties was proximately and efficiently caused by wind.

102.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by denying Plaintiffs' claims for hurricane damage despite the overwhelming evidence from the insured properties, surrounding area, and eyewitnesses that the losses were caused by wind activity.

103.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by unfairly treating and adjusting Plaintiffs' claims for hurricane damage differently than the few other similar claims for hurricane damage that they did provide coverage for and pay.

104.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by negligently, gross negligently, and/or recklessly failing to conduct adequate, proper, honest, and good faith inspections, adjustments and investigations of Plaintiffs' claims for hurricane damage prior to denying such claims.

105.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by denying Plaintiffs' claims for hurricane damage without conducting adequate, proper, honest, and good faith inspections, adjustments and investigations of Plaintiffs' claims for hurricane damage.

106.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by basing denial of Plaintiffs' claim for hurricane damage on inadequate investigations, inspections, and adjustments of Plaintiffs' loss.

107.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by basing denial of Plaintiffs' claims for hurricane damage on the inspections, investigations and adjustments of adjusters who were unqualified to determine the proximate cause of the losses.

108.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by failing to utilize objective meteorologists or engineers to determine the proximate cause of the losses prior to denying Plaintiffs' claims for hurricane damage.

109.    DEFENDANTS tortiously, maliciously and in bad faith without a legitimate or arguable reason breached the subject policies by failing to construe the policies in favor of coverage for Plaintiffs' insured losses.

110.    DEFENDANTS' tortious, malicious and bad faith breaches of contract have proximately caused Plaintiffs' economic and emotional damages.

111.    DEFENDANTS' acts and conduct as alleged above were wilful, wanton, malicious, grossly negligent, and done with reckless disregard for the rights of Plaintiffs, thereby arising to the level of an independent tort and entitling Plaintiffs to an award of punitive damages.

### COUNT FIVE:
#### WAIVER & ESTOPPEL

112.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

113.    DEFENDANTS had the obligation and duty to establish what, if any, part of Plaintiffs' losses fell under the terms of their policy exclusions. By declaring the burden of proof

irrelevant and intentionally abandoning the burden of establishing what, if any, part of the losses was excluded and thereby shifting the burden of proof to Plaintiffs, DEFENDANTS waived their right to exclude any part of the losses.

114.    DEFENDANTS denied Plaintiffs' claims for hurricane damage based on speculative, inconclusive, inconsistent, scientifically invalid and non-objective engineering reports.  DEFENDANTS have therefore waived the right to utilize and/or rely on new or different engineers and/or meteorologists now to "mend the hold" or legitimize the basis for the denials after the fact, and should be estopped from doing so now.

115.    DEFENDANTS' conduct and denial constitutes a waiver of the right to now inspect the insured properties; reinvestigate the causes of loss; or utilize engineers and/or meteorologists to do what should have been done prior to the denials.  DEFENDANTS therefore waived the right to make any causal determination of the losses now that the matter is in litigation, and should be estopped from being able to conduct any kind of post-denial investigations, inspections of the insured properties, or utilizing different litigation experts to now determine the cause of the losses and "clean up" its adjustment process.  DEFENDANTS should further be estopped from using litigation experts to now determine the cause of loss and justify its invalid denials.

## VI
## JURY DEMAND

116.    Plaintiffs respectfully demands a trial by jury on all issues so triable.

## VII
### REMEDIES

117.    Plaintiffs hereby incorporate and adopt by reference each and every allegation set forth in all foregoing Paragraphs of the Complaint.

118.    As a direct and proximate result of DEFENDANTS' negligence, gross negligence, reckless disregard for Plaintiffs' rights as DEFENDANTS' insureds, breach of contract, breach of duty of good faith and fair dealing, bad faith and tortious breach of contract without a legitimate or arguable reason in fact or law, Plaintiffs is entitled to the following relief:

(A)    Payment for all contractual benefits for all coverages afforded to Plaintiffs under the subject policies for damage to their insured residences and personal contents caused by Hurricane Katrina, with interest on all amounts due Plaintiffs under their policies;

(B)    With respect to "Additional Living Expenses" benefits owing under the policies, Defendant should be ordered to immediately pay all such benefits retroactive to August 29, 2005, with interest on all past-due amounts, and pay such benefits prospectively to the limits of coverage or the insured is no longer entitled to them;

(C)    Prejudgment interest on the amounts owing to Plaintiffs in contractual or policy benefits with interest, retroactive to August 29, 2005;

(D)    Compensatory damages on the tort claims for mental distress, emotional harm, and other losses and damages suffered by Plaintiffs as a proximate result on the denial of coverage and attendant breach of contract, all of which falls under the *Veasley* doctrine.    Plaintiffs are entitled on their contract claims to consequential damages, including but not limited to the amounts Plaintiffs expended or lost in trying to subsist without insurance benefits since August 29, 2005. On all claims Plaintiffs are entitled to

recovery for humiliation, stigmatization in the Plaintiffs communities, embarrassment, and mental distress proximately caused by DEFENDANTS' bad faith denial of their claim.

(E)     For the intentionally tortious actions of DEFENDANTS, compensatory damages as described above, and further provided under Mississippi law, and Plaintiffs are entitled to recovery of their attorney fees and costs of litigation for such intentional acts committed by DEFENDANTS.

(F)     Extra-contractual damages for DEFENDANTS' tortious, malicious, wilful, wanton, reckless, grossly negligent, and bad faith conduct, which arose to the level of an independent tort, including but not limited to, compensatory damages for all out-of-pocket expenses incurred by reason of DEFENDANTS' refusal to pay contractual benefits, mental distress and/or emotional harm caused or contributed to by Defendants' bad faith refusal to honor their contracts of insurance, and pursuant to *Veasley* recovery of attorney fees and litigation expenses incurred by Plaintiffs by reason of Defendants denial of insurance coverage, including mental distress, all out-of-pocket expenses and attorney fees and expenses incurred by Plaintiffs.

(G)     Punitive and exemplary damages for DEFENDANTS' tortious, malicious, wilful, wanton, reckless, grossly negligent, and bad faith conduct which arose to the level of an independent tort, including but not limited to, an award of punitive damages sufficient to punish and deter DEFENDANTS and to discourage other insurers from engaging in such misconduct, taking into account DEFENDANTS' financial condition, all in an amount sufficient to achieve the public purposes underlying an award of punitive damages as may be determined by the Court and/or jury; prejudgment interest on all

amounts in contractual benefits and compensatory damages awarded by the Court and/or jury; and all costs of the litigation, including but not limited to reasonable attorney fees, incurred in prosecuting this action and any subsidiary or auxiliary actions that arise in determining the losses of the individual Plaintiffs by reason of the non-payment of contractual benefits, in an amount to be determined by the Court following conclusion of all proceedings herein.

(H)     An Order estopping DEFENDANTS from now inspecting the insured property or determining the cause of loss based on its denial and post-denial conduct.

119.     Plaintiffs respectfully requests such further general or specific relief to which they are entitled at law or in equity.

Respectfully submitted this the 17th day of June, 2009.

HAROLD YORK and CAROL YORK,
PLAINTIFFS

Attorney for Plaintiffs

**OF COUNSEL:**

Don John W. Barrett (MS Bar No. 2063)
Malcolm McMullan, Jr. (MS Bar No. 8494)
Barrett Law Offices
Post Office Box 987
Lexington, MS  39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Dewitt M. Lovelace (MS Bar No. 1449)
Lovelace Law Firm, P.A.
36474 Emerald Coast Parkway, Suite 4202
Destin, FL  32541
Telephone: (850) 837-6020
Facsimile: (850) 837-4093

Zach Butterworth (MS Bar No. 9946)
Michael Hesse (LA Bar No. 6842)
Gary Yarborough, Jr. (MS Bar No. 102310)
Hesse & Butterworth, PLLC
841 Highway 90
Bay St. Louis, MS 39520
Telephone: (228) 466-0020
Facsimile: (228) 466-0550

Thomas P. Thrash
Thrash Law Firm
1101 Garland Street
Little Rock, AR 72201
Telephone:  (501) 374-1058
Facsimile:  (501) 374-2222